UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

CHAMBERS OF
STEPHANIE A. GALLAGHER
UNITED STATES DISTRICT JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
(410) 962-7780
Fax (410) 962-1812

October 24, 2019

LETTER TO COUNSEL

RE:  *Aleia Dowdy v. Santander Consumer USA, Inc.*;
     Civil No. SAG-19-01386

Dear Counsel:

Plaintiff, Aleia Dowdy, filed this class action lawsuit against Defendant Santander Consumer USA, Inc. ("Santander"), for claims arising out of her financing of a purchase of a motor vehicle. Currently pending are two motions: (1) Santander's Motion to Compel Non-Class Arbitration, ECF 15, and (2) Dowdy's Motion to Strike, ECF 30. I have reviewed those motions, and the related oppositions and replies. *See* ECF 16, 20, 33, 36. No hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2018). For the reasons stated below, Dowdy's motion to strike will be denied, and Santander's motion to compel arbitration will be granted.

The basic facts underlying the transaction are undisputed. In 2007, Dowdy purchased a used vehicle from Koons Used Auto Car Outlet ("Koons") in Baltimore, Maryland. ECF 15-1 at 1. Dowdy executed two financing agreements to complete the purchase: a Buyer's Order and a Retail Installment Sales Contract ("RISC"). *Id.* at 1–2. Koons immediately assigned both agreements to Santander. *Id.* at 3.

Dowdy's Second Amended Complaint contains a single count, alleging that Santander violated Maryland's Creditor Grantor Closed End Credit Provisions ("CLEC"), Md. Code, Com. Law. 12-1001 *et seq.*, by charging and collecting "convenience fees" for payments she made by telephone or internet. ECF 4. She further alleges her claim on behalf of a putative class of customers, defined as those who entered into a credit contract governed by CLEC and were charged convenience fees by Santander for making payments due under a RISC. *Id.* at 5.

Santander removed the Second Amended Complaint to this Court on May 10, 2019, under the Class Action Fairness Act of 2005 ("CAFA"). ECF 1. Santander now moves to enforce an arbitration agreement in the Buyer's Order that Dowdy signed, ECF 15.

**Legal Standard**

In this case, because both parties have relied upon documents outside the pleadings in support of their positions, I will apply the summary judgment standard to the motion to compel arbitration. *See* ECF 15-2; 16-2 through 16-4. "Motions to compel arbitration exist in the

netherworld between a motion to dismiss and a motion for summary judgment," and "[w]hether the motion should be treated as a motion to dismiss or a motion for summary judgment turns on whether the court must consider documents outside the pleadings." *PC Const. Co. v. City of Salisbury*, 871 F.Supp. 2d 475, 477-78 (D. Md. 2012); *see also Iraq Middle Mkt. Dev. Found. v. Harmoosh*, 848 F.3d 235, 241-42 (4th Cir. 2017) (adopting the district court's use of the summary judgment standard). Because both parties premise their arguments on documents outside the pleadings, including the Buyer's Order and the RISC which are integral to the Second Amended Complaint, this Court will consider documents outside the pleadings and the summary judgment standard will be used.

Rule 56(a) of the Federal Rules of Civil Procedure states that the court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Santander, as the moving party, bears the burden of showing that there is no genuine dispute of material fact. *See Casey v. Geek Squad*, 823 F. Supp. 2d 334, 348 (D. Md. 2011). If Santander establishes that there is no evidence to support Dowdy's claim that the arbitration clause is inapplicable, the burden then shifts to Dowdy to proffer specific facts to show a genuine issue exists. *Id.* Dowdy must provide enough admissible evidence to "carry the burden of proof at trial." *Id.* at 349 (quoting *Mitchell v. Data Gen. Corp.*, 12 F.3d 1310, 1315-16 (4th Cir.1993)). The mere existence of a scintilla of evidence in support of Dowdy's position is insufficient; rather, there must be evidence on which a factfinder could reasonably find for Dowdy. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Moreover, a genuine issue of material fact cannot rest on "mere speculation, or building one inference upon another." *Casey*, 823 F. Supp. 2d at 349. In applying the summary judgment standard, a court must view the facts and inferences "in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986).

Dowdy has filed, in part, a motion seeking to conduct additional discovery relating to Santander's motion to compel arbitration. ECF 30 at 7. Because this Court is applying the summary judgment standard, it will consider Dowdy's motion as analogous to a party's declaration under Fed. R. Civ. P. 56(d), seeking to demonstrate why it cannot present facts essential to justify its opposition without additional discovery. "[T]o justify a denial of summary judgment on the grounds that additional discovery is necessary, the facts identified in a Rule 56 affidavit must be 'essential to [the] opposition.'" *Hamilton v. Mayor & City Council of Baltimore*, 807 F.Supp. 2d 331, 342 (D. Md. 2011) (citation omitted). The Court should deny a non-moving party's Rule 56(d) request for additional discovery "where the additional evidence sought for discovery would not have by itself created a genuine issue of material fact sufficient to defeat summary judgment." *Strag v. Bd. of Trs., Craven Cmty. Coll.*, 55 F.3d 943, 953 (4th Cir. 1995); *see Amirmokri v. Abraham*, 437 F.Supp. 2d 414, 420 (D. Md. 2006) ("A Rule 56[(d)] motion for additional discovery is properly denied when the additional evidence sought to be discovered would not create a genuine issue of material fact sufficient to defeat summary judgment.") (citing *Strag*, 55 F.3d at 954)).

Applying that analogy here, Dowdy has not established that the additional discovery she seeks would create a genuine issue of material fact in support of her opposition. First, several of the items she seeks are items that should be equally within her possession. *See* ECF 30 at 7 (requesting the opportunity "to gather any communication from Santander to Dowdy notifying Dowdy of the original assignment to NCB Management Services, Inc."); *Id.* at 8 (requesting "to uncover any documents provided to Dowdy related to NCB Management Services, Inc. [sic] collection of the account."). Second, some of the documents she seeks clearly are already within her possession, since she attached them to her own filings in this case. *Id.* ("Santander filed pages 1-30 of the Forward Flow Financial Assets Sale Agreement but failed to include pages 31-38 with its filing. Dowdy previously filed what she believes to be pages 32 and 33 of this agreement.") The third and final category of items Dowdy seeks is simply irrelevant to the dispute. Dowdy "requests leave to take discovery on Santander's internal operating procedures undertaken after it entered into the Forward Flow Financial Assets Sale Agreement with NCB Management Inc. (*i.e.* accounting, charge offs, data storage, book entries relating to assigned RISCs)." *Id.* at 7. The question of what was assigned under the Forward Flow Financial Assets Sale Agreement is a question of contractual interpretation, and Santander's internal operating procedures are therefore irrelevant. Because none of the discovery sought would create a genuine issue of material fact to support Dowdy's position, I will deny her request to conduct additional discovery relating to Santander's motion to compel arbitration.

**Analysis**

**I. Motion to Compel Arbitration**

Santander seeks to compel non-class arbitration, under the terms of the Arbitration Agreement in the Buyer's Order. Dowdy makes four arguments in opposition: 1) the RISC is a stand-alone document, without an arbitration agreement; 2) the Buyer's Order limits the application of its Arbitration Agreement to its original signatories, Dowdy and Koons; (3) even if Santander had a right to compel arbitration, the right was released upon the execution of a settlement agreement between Dowdy and Santander's assignee, NCB Management, Inc. ("NCB"); and 4) the RISC merged into the Judgment entered by the District Court in the dispute between NCB and Dowdy.

Dowdy concedes that the Federal Arbitration Act favors the enforcement of written arbitration agreements between parties. *See* ECF 16 at 6 (citing *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006)). However, Dowdy correctly notes that before a court can properly compel arbitration, the moving party must prove "a written agreement that includes an arbitration provision that purports to cover the dispute[.]" *Adkins v. Labor Ready, Inc.*, 303 F. 3d 496, 500-01 (4th Cir. 2002) ("[E]ven though arbitration has a favored place, there still must be an underlying agreement between the parties to arbitrate."). Dowdy contests the existence of such an agreement, on multiple bases.

### A. The Arbitration Agreement Governs Disputes Under the RISC

First, Dowdy contends that because her claim arises under the RISC, not the Buyer's Order, and because the RISC does not contain an Arbitration Agreement, but does contain an integration clause, the Arbitration Agreement is not part of the RISC's terms. ECF 16 at 9–11. However, the express terms of the Buyer's Order, which was also signed by Dowdy, agree that the parties will arbitrate "any other agreement relating to this transaction." ECF 15-2 at 5 ¶ 22. Thus, the Arbitration Agreement does not need to be incorporated into the RISC by its language, because the RISC is expressly within the scope of the Arbitration Agreement contained in the Buyer's Order.

In addition, *Rota-McLarty v. Santander Consumer USA Inc.*, 700 F.3d 690 (4th Cir. 2012) illustrates the principle that arbitration agreements contained in Buyer's Orders are enforceable, even where the arbitration agreement is not also contained in the accompanying RISC. In *Rota-McLarty,* like in this case, the plaintiff purchased a used car from a dealership and executed a Buyer's Order and a RISC in connection with the transaction. *Id. at 695.* The dealership assigned the RISC to Santander immediately following the sale. *Id.* Like in this case, the RISC contained no arbitration provision, but it did contain an integration clause nearly identical to the one contained in Dowdy's RISC. *Id.* Responding to the Plaintiff's contention that the integration agreement prevented reading the Buyer's Order and the RISC as a single agreement, the Fourth Circuit held, "[t]he facts in this case support the district court's finding that the Buyer's Order and RISC were made as part of a single transaction, and should be interpreted together under Maryland law." *Id.* at 700; *see also Ford v. Antwerpen Motorcars*, 117 A.3d 21, 29 (Md. 2015) ("[M]ultiple documents may be construed together as evincing the entire agreement of the parties to a vehicle sales contract.").

### B. The Assignment Puts Santander in Koons's Shoes

Dowdy contends that Santander cannot enforce the Arbitration Agreement, because it pertains only to the original signatories of the Buyer's Order, Dowdy and Koons. ECF 16 at 12-16. This precise argument, using nearly identical language, was raised before and rejected by Judge Blake in *Graham v. Santander Consumer USA, Inc.*, CCB 17-3148, 2018 WL 2462881 (D. Md. June 1, 2018). Judge Blake reasoned:

> First, Santander cannot enforce the arbitration agreement, according to Graham, because it was not a party to the original agreement. But Graham's view is fatally undermined by the assignment of Darcars' rights to Santander. An assignment allows a third party to "stand in the shoes" of an original party to the contract, *Miller v. Pacific Shore Funding*, 224 F. Supp. 2d 977, 996 (D. Md. 2002) (applying Maryland law), "transfer[ing] all interests in the property from the assignor to the assignee," *Roberts v. Total Health Care, Inc.*, 709 A.2d 142, 148 (Md. 1998). Thus, in effect an assignment replaces the name of the assignor in the contract with that of the assignee, removing any need for a contract to anticipate an assignee by, for example, specifically naming him as a future party. Here, the assignment had just

> that effect, granting Santander, though unnamed in the contract, every right Darcars previously enjoyed under the contract. Graham's argument is unpersuasive.

*Id.,* at *2. Judge Blake's analysis is equally applicable to the facts of this case, and I adopt it in its entirety. As an assignee, Santander has every right Koons previously enjoyed under the Buyer's Order, and thus it can enforce the Arbitration Agreement.

### C. Dowdy's Settlement Agreement with NCB Does Not Bar Santander's Claims

Dowdy insists that Santander can no longer compel arbitration, because Santander assigned the RISC to NCB. ECF 16 at 16-19. Dowdy's position is unsupported by the plain language of the contract between Santander and NCB. The Financial Asset Sale Agreement expressly states that NCB "is only purchasing Financial Assets as such term is specifically defined in this Agreement" and that nothing about the transfer of data files should "be construed to evidence an intention . . . to sell or acquire any such other assets, collateral, claims or rights." ECF 20-2 ¶ 6.15. "Financial Assets" is defined as "each Obligor's Debt as shown in the motor vehicle retail installment sales finance contracts security agreements, and promissory notes identified on the Financial Asset Schedule and each Data File." *Id.* ¶ 1.28. In other words, Santander sold or assigned only the debt to NCB, and did not assign its rights in the RISC itself. Judge Blake rejected a nearly identical argument in *Graham*, and explained that "Santander did not assign away *all* of its rights, but just its rights to a monetary claim on Graham's outstanding payment." 2018 WL 2462881, at *4.

Dowdy's own allegation, in her Second Amended Complaint, supports that plain language reading of the assignment. *See* ECF 4 ¶ 26 ("Specifically, SANTANDER assigned 'all rights, title and interest of [Santander] in and to those certain receivables, judgments or evidences of debt described in the Financial Assets Sale Agreement and Financial Asset Schedule . . . attached hereto and for all purposes[.]'"). The litigation between NCB and Dowdy to collect on the receivable/debt, and any resolution of that dispute, has no impact on Santander's ability to compel arbitration under the RISC and Buyer's Order, which were not assigned.

### D. The RISC Did Not Merge into the Judgment in District Court

In her final argument, Dowdy contends that when the District Court dismissed NCB's case against Dowdy with prejudice, "any rights NCB had under the RISC were extinguished." ECF 16 at 19. Dowdy therefore posits that, "The RISC merged into the December 17, 2018 judgment and Santander is now precluded from enforcing the RISC's terms, including the Arbitration Agreement purportedly contained therein." *Id.*

Dowdy cites *Accubid Excavation, Inc. v. Kennedy Contractors, Inc.*, 981 A.2d 727, 738 (Md. Ct. Spec. App. 2009), for the proposition that "a contract is 'merged in a judgment or decree rendered upon it.'" ECF 16 at 19. In *Accubid,* a contractor obtained an award of damages under a contract, and then sought an award of post-judgment attorney's fees. *Id.* at 736–37. The court explained that the merger doctrine precluded an additional award of fees in that circumstance,

because the contractor had already made its claim for relief under the contract. *Id.* at 741 ("[A] request for attorney's fees based on a contract provision is part of the damages claim under the contract."). In reaching that decision, the court quoted a case describing the merger doctrine as follows:

> Claim preclusion, or res judicata, has two aspects. The first applies to a judgment for a defendant, barring the plaintiff from bringing another action on the same claim. The second aspect is the rule of merger, which applies generally to a judgment for a plaintiff in an action to recover money. As a general rule, when a valid final judgment for the payment of money is rendered, the original claim is extinguished, and a new cause of action on the judgment is substituted for it . . . Thereafter, the plaintiff cannot maintain an action on the original claim or any part thereof.

*Accubid,* 981 A.2d at 739 (internal citations omitted). *Accubid* does not support Dowdy's position, because the facts of this case are the inverse of those in *Accubid.* This is not a case in which a plaintiff is seeking "two bites at the apple" under the same contract. The plaintiff in the District Court case, NCB, is not involved in this proceeding. Furthermore, NCB's assignor/assignee, Santander, is the defendant, not the plaintiff, in this matter. Additionally, applying the merger doctrine here would allow Dowdy to sue Santander under the RISC, but prevent Santander from relying on the RISC in its defense. This illogical result demonstrates that *Accubid* is inapposite.

**II.     Dowdy's Motion to Strike (and For Alternative Relief)**

Dowdy filed a motion to strike "new arguments and evidence" from Santander's Reply to its Motion to Compel Arbitration. ECF 30 (seeking to strike the contents of ECF 21). Procedurally, I concur with the opinion Judge Chasanow issued in *Maxtena, Inc. v. Marks*, Civil No. DKC-11-0945, 2012 WL 113386 (D. Md. Jan. 12, 2012); *see also Muir v. Applied Integrated Techs., Inc.*, DKC-13-0808, 2013 WL 6200178, at *4 (D. Md. Nov. 26, 2013) ("[M]otions, briefs or memoranda, objections, or affidavits may not be attacked by the motion to strike."). As in *Maxtena*, Dowdy "does not cite any procedural rule as a basis for doing so." *Id.* at 4. Judge Chasanow opined that the Federal Rules of Civil Procedure only permit a motion to strike matters contained in pleadings, not those contained in other motions, briefs, or attachments. *Id.* at *4. Santander's Reply to its Motion to Compel Arbitration is not a pleading. Accordingly, a motion to strike its contents is procedurally improper.

The proper mechanism for Dowdy to raise an objection to the contents of Santander's reply would be to file a motion for leave to file a surreply, which Dowdy has in fact done, in the alternative. ECF 30. Her request for leave to file a surreply, however, is moot, because she made two-and-one-half pages' worth of substantive arguments about the contents of Santander's Reply memorandum within her Motion to Strike (plus another two-and-one-half pages within her Reply to the Motion to Strike). *See* ECF 30 at 4-6; ECF 36 at 3-5. There is no reason to permit an additional surreply, other than that which has effectively been filed in the guise of a motion to

strike.[1] I have considered those substantive arguments in adjudicating the motions herein, but, for the reasons described above, they are unpersuasive. Dowdy's motion to strike, or for leave to file a surreply and for leave to take discovery, will accordingly be denied.

      Despite the informal nature of this letter, it should be flagged as an opinion. A separate Order follows.

                                Sincerely yours,

                                      /s/

                                Stephanie A. Gallagher
                                United States District Judge

---

[1] To the extent Dowdy takes the position that she should be entitled to a surreply because Santander made new arguments in its Reply, ECF 30 at 2-4, her argument lacks merit. The standard briefing schedule permits the moving party, who bears the burden of proof, to file a reply to the nonmovant's opposition. In almost every circumstance, arguments made in reply will differ somewhat from those contained in the movant's opening brief. Otherwise, the reply would be entirely superfluous. Nothing about Santander's Reply in this case, ECF 21, deviated from typical reply argument to the extent that the Court would exercise its discretion to disregard the argument, or to permit additional briefing.